UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARY FOUSHA,                        )
                                    ) No. CV-09-3033-JPH
          Plaintiff,                )
                                    ) ORDER GRANTING DEFENDANT'S
v.                                  ) MOTION FOR SUMMARY JUDGMENT
                                    )
MICHAEL J. ASTRUE, Commissioner     )
of Social Security,                 )
                                    )
          Defendant.                )
                                    )
_____   )

     BEFORE THE COURT are cross-motions for summary judgment noted
for hearing without oral argument on April 16, 2010 (Ct. Rec. 21,
24).  Attorney D. James Tree represents plaintiff; Special
Assistant United States Attorney Michael S. Howard represents the
Commissioner of Social Security ("Commissioner").  The parties
have consented to proceed before a magistrate judge (Ct. Rec. 8).
On February 22, 2010, plaintiff filed a reply (Ct. Rec. 30).
After reviewing the administrative record and the briefs filed by
the parties, the court **GRANTS** Defendant's Motion for Summary
Judgment (Ct. Rec. 24) and **DENIES** Plaintiff's Motion for Summary
Judgment (Ct. Rec. 21).

                           **JURISDICTION**

     Plaintiff filed an application for disability insurance
benefits (DIB) on March 31, 2003, initially alleging onset as of
June 30, 1991 (Tr. 93-95). [Plaintiff filed 3 previous DIB

applications: Tr. 97-99, signed November 5, 2002; Tr. 100-102, signed March 3, 2000; and Tr. 103-105, signed December 13, 1997. Plaintiff withdrew the 1997 application (Tr. 61).] The application was denied initially and on reconsideration (Tr. 47-49, 57-59).

Administrative Law Judge (ALJ) Hayward C. Reed held a hearing January 9, 2008. Plaintiff, represented by counsel, testified (Tr. 753-782). Several weeks after the hearing, on January 23, 2008, plaintiff amended the onset date to March 14, 1995 (Tr. 750), noted in plaintiff's briefing but not by the defendant or the ALJ. At a supplemental hearing on May 14, 2008, plaintiff, medical expert Ronald Klein, Ph.D., and vocational expert Debra Lapoint testified (Tr. 785-817). On June 20, 2008, the ALJ issued an unfavorable decision (Tr. 20-27). After the Appeals Council denied review on February 9, 2009 (Tr. 7-9), ALJ Reed's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on March 23, 2009 (Ct. Recs. 1,4).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcripts, the ALJ's decision, the briefs of the parties and are briefly summarized here.

Plaintiff was 46 years old on the amended onset date, and 48 on March 31, 1997, her last insured date (Tr. 29). She is certified to teach grades K through twelve and has two bachelor's degrees (Tr. 729). Plaintiff told treating Dr. Robert Fink,M.D., in February of 1993 she was in school to become a special

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                    - 2 -

education teacher and had already earned her teaching certificate
from Central Washington University (Tr. 567-568); in 1997, Dr.
Haykin notes Ms. Fousha has a BA in English from the University of
Washington (Tr. 553).  She has worked as a school librarian,
substitute teacher, sales clerk, and customer service clerk (Tr.
808-809).  Ms. Fousha alleges disability onset as the amended date
of March 14, 1995, due to chronic fatigue syndrome (CFS) and
bipolar disorder (Tr. 112,769).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability"
as the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than
twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The
Act also provides that a Plaintiff shall be determined to be under
a disability only if any impairments are of such severity that a
plaintiff is not only unable to do previous work but cannot,
considering plaintiff's age, education and work experiences,
engage in any other substantial gainful work which exists in the
national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
Thus, the definition of disability consists of both medical and
vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
(9th Cir. 2001).

The Commissioner has established a five-step sequential
evaluation process for determining whether a person is disabled.
20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person
is engaged in substantial gainful activities.  If so, benefits are

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                          - 3 -

denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If
not, the decision maker proceeds to step two, which determines
whether plaintiff has a medically severe impairment or combination
of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

     If plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1.  If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from
performing work which was performed in the past.  If a plaintiff
is able to perform previous work, that Plaintiff is deemed not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
At this step, plaintiff's residual functional capacity ("RFC")
assessment is considered.  If plaintiff cannot perform this work,
the fifth and final step in the process determines whether
plaintiff is able to perform other work in the national economy in
view of plaintiff's residual functional capacity, age, education
and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

     The initial burden of proof rests upon plaintiff to establish

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                         - 4 -

a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                           - 5 -

(citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

At the outset, the ALJ found plaintiff met the DIB requirements through March 31, 1997 (Tr. 22).  He found at step one Ms. Fousha worked briefly in 2004 but it did not rise to the level substantial gainful activity (Tr. 22).  At step two he found she suffers from the medically determinable impairments of bipolar

disorder and chronic fatigue syndrome (CFS), but since neither alone nor in combination significantly limited her ability to perform basic work activities, they were not severe (Tr. 22-23). As the step two finding was determinative, the ALJ found Ms. Fousha not disabled as defined by the Social Security Act (Tr. 27).

**ISSUES**

Plaintiff contends the Commissioner erred as a matter of law when he found bipolar disorder and CFS were not severe impairments prior to March 31, 1997, the date she was last insured (Ct. Rec. 22 at 14).  Ms. Fousha alleges the ALJ improperly assessed medical and lay evidence, as well as her credibility, and these errors led to his erroneous finding at step two that her impairments were not severe.  The Commissioner responds the ALJ's assessment of the evidence was supported by the record and free of legal error.  He asks the Court to affirm (Ct. Rec. 25 at 4,6).

**DISCUSSION**

**A. Weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F.2d 341,

345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

**B. Step Two - mental impairment**

An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005)(citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28 (1985). Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F.3d at 687; *see also Yuckert*, 841 F.2d at 306.

Plaintiff alleges because she suffers from a severe mental impairment, the ALJ's step two finding is erroneous (Ct. Rec. 22 at 11). The Commissioner responds that while plaintiff's impairments may have become severe after her insurance expired, the ALJ's determination is supported by the evidence relevant to Ms. Fousha's mental limitations during the DIB claim period (Ct. Rec. 25 at 3-4).

As noted, the ALJ found plaintiff had the medically

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                          - 9 -

determinable impairment of bipolar disorder before her last insured date, but, because it did not significantly limit her ability to perform basic work-related activities for twelve consecutive months before her insured status expired, the impairment was non-severe (Tr. 22-23).

The ALJ considered psychologist Ronald Klein, Ph.D.'s opinion the evidence is insufficient to find plaintiff's bipolar disorder was a severe impairment during the relevant period (Tr. 24-25, referring to Tr. 792-793). Dr. Klein testified the record shows before her insured status expired, Ms. Fousha had no more than mild limitations in her activities of daily living, social functioning, and in the area of concentration, persistence, and pace. Dr. Klein found no evidence of deterioration and no evidence supporting the existence of the part "C" criteria during the relevant period (Tr. 24, referring to Tr. 792-794, 800). The ALJ gave Dr. Klein's opinion significant weight (Tr. 25).

The ALJ considered and rejected the February 18, 2000, opinion of treating doctor David Musnick, M.D., and the September 2002 and October 2005 opinions of treating doctor David C. Hall, M.D., that plaintiff was disabled (Tr. 26, referring to Tr. 236,483). He rejected these opinions because they were rendered more than three years after plaintiff's insured status expired, and because the scant medical evidence from the relevant period does not support their opinion plaintiff was disabled.

Primary care provider Dr. Musnick's records show on October 1, 1997, about seven months after plaintiff's date last insured, she does not want to renew prescription medication (10/17/97); reports "vague" symptoms and history (11/6/97); Dr. Musnick

stresses importance of maintaining a psychiatrist (6/30/98) and advises her to get one (7/6/98); Ms. Fousha reports symptoms are "reasonably well-controlled with medications for her depression"(1/22/99); says a psychiatrist at Harborview advised her to consider hormone replacement therapy and anti-depressants; Dr. Musnick diagnoses depression and menopause (3/26/99); and plaintiff thinks spontaneous declines in mood are "definitely related to the weather" (9/7/99).  (Tr. 259,266,270,278,289-290.)

On February 28, 2005, Dr. Hall indicates he has been plaintiff's psychiatrist since 1999, well after the last insured date (Tr. 472).  On October 11, 2000, Dr. Hall opined Ms. Fousha was disabled over the past ten or more years due to past sexual abuse, bipolar disorder, and CFS (Tr. 486).  On the same date, he opined plaintiff's bipolar disorder was currently under reasonable control with medications (Id).  He notes in 1995, plaintiff reportedly experienced "presumed lithium toxicity[1]," stopped taking it, and her mood swings returned (Tr. 488).

The ALJ considered the opinion in January of 1992 of John Addison, M.D., then plaintiff's primary care provider.  Dr. Addison noted Ms. Fousha's bipolar disorder was well-controlled recently and she is stable on medication (lithium) (Tr. 25, referring to Tr. 230).

To further aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found her less than fully credible (Tr. 24).  Credibility determinations bear on

---

[1]Treating physician Robert Williams, D.O., notes on September 18, 1995, Ms. Fousha insists her lithium level was toxic despite being informed it was "far from toxic." (Tr. 633).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                              - 11 -

evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

The ALJ gave clear and convincing reasons to support his finding that plaintiff's allegations regarding her limitations and ability to work were not entirely credible. He points out evidence from treating doctors shows Ms. Fousha's bipolar symptoms have been well-controlled with medication. He observes plaintiff sought minimal mental health treatment during the relevant period.

Plaintiff was diagnosed with bipolar disorder in 1984 (Tr. 720,775), thirteen years before her last insured date. Also in

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    - 12 -

1984, Ms. Fousha became clean and sober.  The record shows she has

maintained sobriety with no relapses noted after 1984 and worked

through 1990 (*see e.g.*, Tr. 235).  ALJ Reed observes in January of

1997, two months before plaintiff's insured status expired, Ms.

Fousha admitted her last hypomanic episode occurred when she was

still drinking, i.e., before 1984 (Tr. 25, referring to Exhibits

3F/5,31F/2,4,5,7-8, 33F/1; Tr. 695).

The ALJ inferred this evidence undercut plaintiff's claim her

hypomanic bipolar symptoms were disabling during the relevant

period since she was alcohol free (Tr. 25, referring to Exhibits

3F/5, 26F/2, 31F/1 -2,4-5,7-8, 33F/1).  In the court's view

plaintiff misreads the ALJ's treatment of the sobriety evidence.

The ALJ inferred alcohol may have exacerbated Ms. Fousha's bipolar

symptoms, based on her statement, making it less likely the

symptoms were disabling twelve months prior to 1997, 13 years

after she stopped drinking.  The ALJ's reason is supported by the

record.

When weighing credibility, as noted, the ALJ relied on

treating Dr. Addison's 1992 opinion about seven months after the

original onset date[2] and five years before plaintiff's last

insured date.  Dr. Addison observed: (1) Ms. Fousha's bipolar

disorder[3] stabilized on lithium and the disorder "has been well-

controlled recently"; and (2) plaintiff is a recovering alcoholic

and has had counseling in the past (Tr. 25, relying on Tr. 230),

---

[2]Prior to and at the second hearing plaintiff's counsel
amended the onset date to March 14, 1995 (Tr. 750,795).

[3]At that time the condition was known as manic-depressive
disorder. For clarity it is referred to throughout as bipolar
disorder.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                - 13 -

indicating she was not in counseling at the time.
Similarly, in February of 1993, plaintiff told treating
psychiatrist Robert Fink, M.D., she underwent little counseling
since becoming sober in 1984, a period of nine years after her
bipolar disorder diagnosis (Tr. 570).

The ALJ relied on evidence during the relevant period showing
plaintiff's disorder could be and had been stable and well-
controlled on medication.  He relied on evidence plaintiff stopped
taking effective prescribed medication, and did not regularly seek
mental health treatment, during the relevant period.  The ALJ
relied on this evidence when he assessed  credibility and
considered the severity of the impairment.

The ALJ's reasons for his credibility assessment are clear,
convincing and supported by substantial evidence.  *See Burch v.
Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Thomas v.
Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); Soc. Sec. Ruling
96-7p (failure to follow recommended medical treatment properly
considered); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.
1989)(noncompliance with medical care or unexplained or improperly
explained reasons for failing to seek treatment casts doubt on
subjective complaints); 20 C.F.R. §§ 404.1530,426.930; and *Morgan
v. Comm. of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir.
1999) (an ALJ may consider medical reports of improvement and
minimal treatment when evaluating a claimant's credibility); and
*Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.
2006)(impairments that can be controlled effectively with
medication are not disabling for the purpose of determining
eligibility for benefits).

In weighing the medical and other evidence, the ALJ relied on the scant evidence of treatment during the relevant period when he determined Ms. Fousha's bipolar symptoms caused no more than minimal limitations (Tr. 25-26).  The court's review of the record supports the ALJ's reason.

The scant evidence during the relevant period is comprised of a few records from four sources: (1) treating physician Dr. Williams's record dated August 15, 1996; (2) treating physician David Roys, M.D.'s records dated January 29-March 11, 1997; (3) records of treating doctors and residents at the University of Washington and Harborview (hereafter Harborview) dated April 29-June 24, 1996, including some by Dr. Williams; and (4) the January 15, 1997 letter by lay witness pastor Douglas Lindsay (Tr. 200,614,617-618,684,695-697).

Records from Harborview from April through June of 1996 indicate Ms. Fousha refused to begin lithium (Tr. 618); is still somatically focused (Tr. 617); and is observed to be  mildly depressed and anxious but declines antidepressant medication (Tr. 614).

In August of 1996, about five months into the relevant period, treating physician Dr. Williams points out plaintiff has many somatic complaints and fails to comply with taking medication.  He planned to "try to get her back on lithium" (Tr. 694).

In January of 1997, two months before plaintiff's insurance expired, treating doctor David Roys, M.D., opined plaintiff's mental condition was difficult to diagnose due to her concurrent history of alcoholism (Tr. 695-696).  In the three months

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                    - 15 -

predating her last insured date, Dr. Roys notes plaintiff
repeatedly postponed re-starting antidepressant medication (Tr.
695-697).

Evidence near the relevant period includes (1) a noted
absence of objective symptoms; realizes her many medical problems
and symptoms may be due to her psychological "need to be sick" (3
months prior to relevant period: 1/5/96 at Tr. 626, 1/22/96 at Tr.
624, respectively); and (2) noncompliance with medication is
repeatedly noted: in a sense rejecting help by self-determining
medication increases (1/22/96 at Tr. 624); complains of increased
depression but will not start antidepressants (4/7/97 at Tr. 697);
and, seven months after her last insured date, plaintiff does not
want her medication renewed (10/17/97 at Tr. 290).  Treating
doctor Martin Haykin, M.D., noted on November 3, 1997, plaintiff
was hospitalized three times for depression when not taking
lithium [though not during the relevant period] (Tr. 545).

Treatment providers during and after the relevant period have
assessed a GAF of 65 (6/1/95 at Tr. 640), indicating no more than
mild limitation; of 50, when not taking lithium as prescribed
(10/16/99 at Tr. 727); of 70 (8/11/93 at Tr. 581); and of 60
(10/19/94 at Tr. 590).

The ALJ correctly points out the contemporaneous evidence
shows Ms. Fousha did not regularly seek mental health treatment
during any 12 month consecutive period before her insurance
expired.  Further, during the relevant period, symptoms increased
when plaintiff refused to comply with taking medications as
prescribed.  Treatment providers consistently observe plaintiff is
stable when compliant with prescribed medication.

During the relevant period, plaintiff's lack of treatment, non-compliance with medication, and successful management of symptoms when compliant with prescribed medication noted by treatment providers, is significant evidence plaintiff viewed her limitations as no more than mild.  The ALJ is correct that plaintiff fails to present evidence showing she suffered any more than minimal limitations due to symptoms of bipolar disorder during the relevant period.

Plaintiff contends the ALJ failed to properly weigh the lay testimony of two witnesses, her supervisor in 2008 and her pastor. The latter provided counseling within the relevant period, beginning a little more than two months before plaintiff's last insured date (Ct. Rec. 22 at 16-17).  Ms. Fousha alleges the ALJ's reasons if affirmed would result in all lay testimony being rejected.

The ALJ must take into account probative lay witness testimony, unless he or she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Dodrill v. Shalala*, 12 F.3d 915,919 (9th Cir. 1993).  An ALJ may reject lay testimony which conflicts with medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ considered pastor Douglas Lindsay's January 8, 2008, letter indicating on January 15, 1997,[4] he started counseling plaintiff (Tr. 26-27, referring to Tr. 200).   Lindsay observes

---

[4]Plaintiff dates Lindsay's letter as early 1997 (Ct. Rec. 22 at 6), and defendant, 1999 (Ct. Rec. 25 at 11).  The court agrees with plaintiff the date appears to be 1997.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                    - 17 -

Ms. Fousha saw a psychiatrist during the same period for severe psychological and emotional problems.  He [Lindsay] suggested she see a psychologist and opined plaintiff  was unable to work at the time (in 1997) because psychological impairment caused difficulty relating to others and interfered with performing unspecified "basic life skills" (Tr. 200).

The ALJ considered Nancy Nebeker's January 4, 2008, letter written more than ten years after Ms. Fousha's last insured date (Tr. 27, referring to Tr. 202).  Ms. Nebeker supervised plaintiff in 2008 at a sheltered work/training position run by Goodwill Industries.[5]  She opined Ms. Fousha was not mentally able to perform basic work tasks due to problems with memory and being "too easily distracted" (Id).

The ALJ gave these opinions little weight because the witnesses lack medical training, their opinions are inconsistent with the medical evidence, and, with respect to Ms. Nebeker, her opinion is not probative because she did not observe plaintiff during the relevant period (Tr. 27).

In order to receive disability insurance benefits, a claimant must be disabled as of the date his or insured status expired. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Since Ms. Nebeker's 2008 opinion does not relate back to plaintiff's last insured date of March 31, 1997, the ALJ properly rejected her opinion as irrelevant.

The ALJ rejected Mr. Lindsay's opinion because he is not medically trained in psychiatry or psychology and the medical

---

[5]Plaintiff's counsel described the job as "more of a sheltered employment than anything" (Tr. 779).

evidence contradicts his opinions.  With respect to training, the ALJ stated:

> "the witnesses are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms."

(Tr. 27).

An ALJ may validly reject probative lay witness testimony if it conflicts with the medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  As noted, records show plaintiff sought minimal mental health treatment during the relevant period, her symptoms were well-controlled and stable on prescribed medication, and she repeatedly refused prescribed medication to control bipolar symptoms, despite its efficacy.  All of this evidence noted by the ALJ contradicts Mr. Lindsay's opinion (Tr. 24-26; Tr. 230-235,545,553,591-592,694-695).

When weighing Lindsay's disability opinion (and plaintiff's credibility), the ALJ observes:

> The claimant alleged problems [with] social functioning and concentration. Yet, she had been able to work as a librarian and summer school teacher for several years. These jobs required extensive social interaction and an ability to concentrate in order to teach children. However, she did not indicate any problems performing these functions of her jobs (Exhibit 5E)[at Tr. 144-152]."

(Tr. 25).

In the cited exhibit, plaintiff indicates she worked until June of 1990 (Tr. 144).  As of May 7, 2003, she described her work duties at that time with no indication of problems concentrating or with social interaction (Tr. 151).

Plaintiff correctly observes if an ALJ may properly reject lay testimony because the witness lacks medical training, no lay witnesses by definition could testify, a result contrary to law.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                          - 19 -

In the court's view, the ALJ's error here if any is harmless.  The ALJ also discredited Mr. Lindsay's opinion because it is contrary to medical evidence from treating doctors. This reason is germane and supported by the evidence.  An error is harmless when the correction of that error would not alter the result. *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995).

The ALJ rejected Drs. Musnick and Hall's disability opinions because they are contradicted by those of treatment providers during the relevant period, and their opinions are  based on plaintiff's condition long after her insurance expired.  To the extent their opinions were are based on plaintiff's unreliable self-reporting, they were properly rejected based on the ALJ's adverse credibility determination. (Tr. 25, noting Dr. Klein's testimony that GAF ratings are highly subjective and based primarily on patient's self-reporting).  As noted, the ALJ relied on Dr. Klein's testimony. In addition, he relied on the opinion of an agency reviewing psychologist, and on the opinions of treatment providers during the relevant period (Tr. 24-25, referring to Tr. 204-217,790-803).

The ALJ's reasons for rejecting Drs. Musnick and Hall's contradicted disability opinions are specific, legitimate, and supported by substantial evidence. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,1006 (9th Cir. 2006); *Webb v. Barnhart*, 433 F.3d 683,688 (9th Cir. 2005); *Andrews v. Shalala*, 53 F.3d 1035,1042-1043 (9th Cir. 1995); and *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1435,1463 (9th Cir. 1995).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v.*

*Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405 (g).

The court finds the ALJ's step two finding is supported by the evidence relevant to the DIB period.  The ALJ's assessment of credibility and of the lay testimony is without error; each is supported by the requisite evidence.  Not noted by the ALJ but further supporting his step two are plaintiff's activities while allegedly disabled: plans to teach part-time in September of 1995(Tr. 635); hiked the Rockies on vacation (9/17/97, six  months after her last insured date, at Tr. 699); shopped all day Saturday and Sunday (7/16/02 at Tr. 350); has one year to become a certified ESL teacher (2/2003 at Tr. 429); unhappy with going back to school (6/23/04 at Tr. 496); and has two B.A. degrees (8/10/07 at Tr. 729).  Attending school is an activity which is inconsistent with an alleged inability to perform work.  *Matthews v. Shalala*, 10 F.3d 678,680 (9th Cir. 1993).

To the extent the ALJ discounted credibility based on plaintiff's motives for seeking benefits, any error appears harmless because the ALJ's other stated reasons are clear, concise and fully supported by the evidence.

The ALJ's determination that plaintiff's bipolar disorder had no more than a minimal affect on her ability to work during the relevant period is supported by the evidence and without error.

**C. Step Two - physical impairment**

Plaintiff argues the ALJ should have found CFS is a severe impairment (Ct. Rec. 22 at 12-14).

Symptoms of CFS are first mentioned in 1988 after Ms. Fousha was diagnosed with mononucleosis, as the ALJ observes (Tr. 26, citing Exhibits 24F/4 and 26F/2). He notes plaintiff's complaints of fatigue were infrequent during the relevant period, leading him to infer she "did not feel her symptoms of fatigue were severe enough to warrant consistent medical attention." The ALJ reasoned because plaintiff apparently viewed her symptoms as non-severe, CFS caused no more than minimal limits on Ms. Fousha's ability to work; in other words, her own actions showed the problems were minimal (Tr. 26, referring to Exhibits 3F/2,31F/7,33/F).

Plaintiff theoretically waived this argument. Her attorney told the ALJ at the second hearing that "just prior to March 31st of 1997 [the date last insured] I think there were primarily mental health limitations" (Tr. 806). The court addresses the argument nonetheless.

Plaintiff testified she was diagnosed with CFS in 1991 (Tr. 778). As noted, the ALJ points out complaints of CFS to treating doctors were infrequent during the relevant period, indicating any limitations were no more than minimal (Tr. 26, citing Exhibits 3F/2,31F/7,33F/3 at Tr. 227,573,697). The records reveal, in part, plaintiff complained of continuing fatigue to Dr. Addison in 1992. He notes she had stopped her antidepressant and canceled her next appointment on April 7, 1992 (Tr. 227). From January through June of 1994, Robert Fink, M.D., notes plaintiff indicated she felt "pretty good"; complaints of CFS symptoms improved; and a

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    - 22 -

little depressed "not bad, otherwise okay" (Tr. 573).  David Roys,
M.D., notes during and just after the relevant period, plaintiff
states on more than one occasion she does not want to start
antidepressants; and plaintiff says she will get a homeopathic
cure, followed by a microbial cure, after another source diagnosed
an infection; she thinks it might be the source of all her
problems (2/24/97,3/11/97 and 4/7/97 at Tr. 697).  The ALJ is
correct. Plaintiff's complaints of fatigue and CFS were very
infrequent during the relevant period.

The ALJ considered an agency reviewing doctor's opinion in
2005 that there is insufficient evidence of a severe impairment
caused by CFS (Tr. 26, relying on Tr. 218-225).  As with his
assessment of the contradictory psychological evidence, the ALJ
took plaintiff's credibility into account when he weighed the
evidence of limitations caused by CFS.

The ALJ's determination that CFS is non-severe, that is,
causes no more than a slight abnormality that would have no more
than a minimal effect on plaintiff's ability to work, is fully
supported by the medical and other evidence. *See* 20 C.F.R. §§
404.1521 and 416.921.

The ALJ properly rejected CFS as a severe impairment because
the record shows it had no more than a slight effect if any on
plaintiff's ability to perform work-related tasks during the
relevant period.

ALJ Reed weighed the medical evidence and failed to adopt
some of the opinions of treatment providers, particularly those
who treated plaintiff years after her insurance eligibility
expired. Instead, he relied on the opinions of other treating and

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                              - 23 -

consulting physicians, the testimony of the psychological expert, and his assessment of plaintiff's credibility.  The ALJ gave specific and legitimate reasons, supported by substantial evidence, for rejecting contradicted opinions of severe limitation.

The ALJ's assessment of credibility, medical, and lay evidence is supported by the record and free of legal error.

CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 21)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 22nd day of March, 2010.


                              s/ James P. Hutton

                          JAMES P. HUTTON
                     UNITED STATES MAGISTRATE JUDGE


ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                          - 24 -